IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:11-CV-165-BO

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE ) | |
| CORPORATION, as Receiver for ) | |
| COOPERATIVE BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER** |
| v. ) | |
| ) | |
| FREDERICK WILLETTS, III, et al., ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on plaintiff's motion for partial summary judgment [DE 97], defendants' motion for summary judgment [DE 101], defendants' motion to exclude [DE 95], plaintiff's motion to strike [DE 117], and parties' various motions to seal [DE 104, 105, 113, 115, 120]. For the following reasons, the motions to seal are GRANTED, defendants' motion to exclude is GRANTED, plaintiff's motion to strike is DENIED AS MOOT, defendants' motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED AS MOOT.

## BACKGROUND

Cooperative Bank ("Cooperative") was a commercial banking institution charted under North Carolina law with deposits insured by the Federal Deposit Insurance Corporation ("FDIC"). In June 2009, the North Carolina Commissioner of Banks ("NCCB") declared Cooperative insolvent and named the FDIC as Receiver of the Bank. Pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC succeeded to all rights, titles, powers, and privileges of Cooperative

and Cooperative's shareholders with respect to Cooperative, including, but not limited to, Cooperative's claims against Cooperative's former directors and officers for negligence, gross negligence, and breaches of fiduciary duty or other legal duties.

The FDIC filed this suit against former officers and directors of Cooperative for negligence, gross negligence, and breaches of fiduciary duty in connection with their approval of 86 loans made between January 5, 2007 and April 10, 2008 ("Subject Loans"). In approving the Subject Loans, the complaint alleges and the FDIC submits that the proof at trial will show that defendants deviated from prudent lending practices established by Cooperative's loan policy, published regulatory guidelines, and generally established banking practices, such as obtaining and verifying current financial information, adhering to minimum loan-to-value ("LTV") ratios and adhering to maximum debt-to-income ("DTI") ratios. In addition the complaint alleges defendants, in approving the Subject Loans, ignored prior regulatory criticisms and warnings pertaining to imprudent underwriting practices such as the failure to require hard borrower equity, the failure to analyze and consider borrowers' and guarantors' contingent liabilities, the failure to perform a global cash flow analyses of borrowers and guarantors with multiple entity relationships, and the failure to perform proper debt service coverage analyses.

In conjunction with the closure of Cooperative, the FDIC engaged in an established practice of allowing other institutions to bid for the right to assume Cooperative assets and liabilities. The successful bidder, referred to as the Acquiring Institution ("AI"), entered into a Purchase and Assumption Agreement ("P&A") with the FDIC pursuant to which it agreed, among other things, to pursue collection of the Subject Loans in a commercially reasonable manner. The P&A included a shared loss agreement ("SLA") in which, after all collection efforts were exhausted, if the value of the loan assets deteriorated further than the book value at the date

of closing within the five years after close the FDIC would absorb 80% of the loss and the AI would absorb 20% of the loss on the Subject Loans. The FDIC's 80% share of the loss on the Subject Loans is approximately $40 million for which it seeks recovery in this action.

## DISCUSSION

### I. MOTIONS TO SEAL.

The parties have filed several unopposed motions to seal pursuant to FED. R. CIV. P. 26(c), Local Rule 79.2 and the May 21, 2013 Amended Stipulated Protective Order and Non-Waiver Agreement [DE 71]. The motions concern several memoranda and exhibits which reflect documents that either plaintiff or defendants have designated as protected under the Protective Order and/or documents that may reveal confidential information. For good cause shown Court GRANTS these motions and the Court orders the sealing of documents and exhibits as follows. Pursuant to motion to seal [DE 104], the Court orders that DE 102 and associated exhibits nos. 9, 11, 15–36, 39–56, 60, and 62 be SEALED. Pursuant to motion to seal [DE 105], the Court orders that the entirety of DE 97, DE 98, DE 99, and DE 100, including all exhibits therein be SEALED. Pursuant to motion to seal [DE 113], the Court orders that DE 111 and associated exhibits B, D, E, G, and H, as well as exhibits 1–55 of exhibit C, be SEALED. Pursuant to motion to seal [DE 115], the Court orders that DE 114 including all exhibits therein be SEALED. Finally, pursuant to motion to seal [DE 120], the Court orders that DE 117 including all exhibits therein be SEALED.

### II. DEFENDANTS' MOTION TO EXCLUDE.

Defendants seek to exclude Harry Potter as an expert witness because they allege his opinions on SLA have no basis, are unreliable, and unhelpful, and because his opinion on damages is not rebuttal testimony, but instead an untimely attempt to produce a previously

undisclosed expert on damages issues. Mr. Potter's expert testimony was offered as rebuttal testimony to defendants' expert, Ted Gammill. [DE 96-1].

Expert testimony is only admissible under Rule 702 if it is "relevant" and "rests on a reliable foundation." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260–61 (4th Cir. 1999). Here it appears that Mr. Potter has only analyzed one SLA in his career before being hired to testify in this case. [DE 96-2 Potter Dep. at 14:16–15:22]. This is not substantive experience with the use of SLA and their impact on losses. Therefore Mr. Potter has no basis for giving an expert opinion to the jury about how the FDIC uses SLA or their impact on the damages in this case. *See United States v. Wilson*, 484 F. 3d 267, 274–76 (4th Cir. 2007) (explaining how an expert basing his testimony on experience must explain how his experience leads him to his conclusions and is a sufficient basis for the opinion). Mr. Potter's report merely relies on information found in OIG and FDIC publications. An expert is not needed to relay this type of information to the jury. There is simply no fit here between Mr. Potter's accounting background and experience and his opinions offered on the use of SLA. Accordingly his opinions on SLA are properly excluded.

Mr. Potter's damages opinions must also be excluded as they are not rebuttal testimony and were submitted after the deadline for designating a damages expert passed. Even Mr. Potter does not consider his damages opinion to be rebuttal. [DE 96-2 Potter Dep. at 9:18–10:3]. The FDIC makes no attempt at excusing its late expert submittal on damages and the opinion must therefore be excluded. Accordingly, the Court excludes Harry Potter as an expert witness and does not consider his opinions in ruling on the motions for summary judgment.

III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

A motion for summary judgment cannot be granted unless there are no genuine issues of material fact for trial. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

The moving party must demonstrate the lack of a genuine issue of fact for trial and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Celotex*, 477 U.S. at 324. The Court must view the facts and the inferences drawn from the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Conclusory allegations are insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.") (emphasis in original). "There must be evidence on which the jury could reasonably find for the plaintiff by a preponderance of the evidence." *Id.* at 252. Therefore the inquiry asks whether reasonable jurors could find for the plaintiff by the preponderance of the evidence. *Id.* Plaintiff must produce "significant probative evidence tending to support the complaint" or provide "specific facts showing there is a genuine issue for trial." *Id.* at 249–50. The Court will not consider "unsupported assertions," or "self-serving opinions without objective corroboration." *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

Defendants seek summary judgment on all claims against them. The FDIC brings three claims for relief against defendants: 1) negligence; 2) gross negligence; and 3) breach of fiduciary duties.

> A. The Business Judgment Rule Defeats Plaintiff's Negligence and Breach of Fiduciary Duties Claims.

As the Court held in ruling on the motion to dismiss in this case:

The business judgment rule serves to prevent courts from unreasonably reviewing or interfering with decision made by duly elected and authorized representatives of a corporation. *Robinson on North Carolina Corporations*, § 14.06. "Absent proof of bad faith, conflict of interest, or disloyalty, the business decisions of officers and directors will not be second-guessed if they are 'the product of a

> rational process,' and the officers and directors have 'availed themselves of all
> material and reasonably available information' and honestly believed they were
> acting in the best interest of the corporation." *State v. Custard*, 2010 N.C.B.C. 6,
> 2010 WL 1035809 *21 (N.C. Super. March 19, 2010) (quoting *In re Citigroup
> Inc. S'holder Derivative Litig.*, 964 A.2d 106, 124 (D.Ch. 2009)). The business
> judgment rule is akin to a gross negligence standard. *See First Union Corp. v.
> SunTrust Banks, Inc.*, 2001 N.C.B.C. 09, 2001 WL 1885686 *10 (N.C. Super.
> August 10, 2001).

*F.D.I.C. v. Willets*, 882 F. Supp. 2d 859, 864 (E.D.N.C. 2012). At that stage, the Court could not know whether the business judgment rule shielded defendants' liability absent further factual development and declined to dismiss the case. *Id.* Now, however, the facts have been fully developed and the Court finds that the business judgment rule applies and shields defendants from liability on the ordinary negligence and breach of fiduciary duties claims.

Under the business judgment rule, there can be no liability for officers and directors even when "a judge or jury considering the matter after the fact, believes a decision substantively wrong or degrees of wrong extending though 'stupid,' to 'egregious' or 'irrational,' . . . so long as the court determines that the process employed was either rational or employed in a *good faith* effort to advance the corporate interests." *State v. Custard*, No. 06 CVS 4622, 2010 WL 1035809 *21 (N.C. Super. Mar. 19, 2010) ("*Custard II*") (emphasis in original) (quoting *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967–68 (D. Ch. 1996)).

The business judgment rule involves two presumptions. First, it establishes "'an initial evidentiary presumption that in making a decision the directors [and officers] acted with due care (i.e., on an informed basis) and in good faith in the honest belief that their action was in the best interest of the corporation.'" *Custard II*, 2010 WL at *20–21 (quoting *Robinson on North Carolina Corporations* § 14.6, at 281 (5th ed. 1995)). This is a gross negligence standard. *First Union Corp.* 2001 WL 1885686 *10. Second, the business judgment rule establishes, absent rebuttal of the first presumption, a "powerful substantive presumption that a decision by a loyal

6

and informed board will not be overturned by a court unless it cannot be attributed to any rational business purpose." *Ehrenhaus v. Baker*, 717 S.E.2d 9, 25 (N.C. App. 2011) (quotation omitted). Here plaintiff cannot rebut either presumption on the evidence before the Court.

The substantial discovery produced in this case, which includes voluminous records, 15 depositions of party, third party, and expert witnesses including Cooperative's regulators at the FDIC, fails to reveal any evidence that suggests any defendant engaged in self-dealing or fraud, or that any defendant was engaged in any other unconscionable conduct that might constitute bad faith. Although the decisions of defendants to engage in various forms of lending and to make the particular loans challenged in the complaint, and the wisdom of such decisions raise interesting discussion points in hindsight, the business judgment rule precludes this Court from delving into whether or not the decisions were "good" and limits the Court's involvement to a determination of whether the decisions were made in "good faith" or were founded on a "rational business purpose." Considering the absence of any indication of bad faith, conflict of interest, or disloyalty, the Court now considers whether defendants employed a rational process in making the challenged loans.

A review of the evidence makes it clear that defendants both employed a rational process and acted with a rational business purpose. The complaint alleges that defendants ignored multiple Reports of Examination ("ROE") issued by the FDIC that warned them about Cooperative's underwriting and credit practices and asking for changes. *See e.g.*, [DE 1 Complaint at ¶¶17–20]. However, the very same ROE that recommended changes also graded defendants' management, asset quality, and sensitivity to risks as "satisfactory" and not requiring "material changes." These "grades" are the CAMELS rating provided to Cooperative. [1]

---

[1] "CAMELS" is an acronym for six primary areas of bank operations that are evaluated by bank examiners" Capital, Asset Quality, Management, Earnings, Liquidity, and Sensitivity to Market Risk. Ratings are assigned on a scale of

7

Cooperative received a CAMELS "2" rating, including a "2" rating for management (the defendants) and asset quality (Cooperative's loans) and sensitivity to market risks in 2006. Therefore the facts show that the process that defendants used to make the challenged loans were expressly reviewed, addressed, and graded by FDIC regulators in the 2006 ROE. The regulators assigned defendants a passing grade of "2" in the CAMELS system and to now argue that the process behind the loans is irrational is absurd. Further, each of the loans at issue was subject to substantial due diligence and an approval process that defies a finding of irrationality. The same challenged underwriting and credit administration processes were thoroughly reviewed in 2006, 2007, and 2008 by independent auditors at CRM. CRM independently concluded, in the ordinary course of its review, that "extensive underwriting is performed at loan inception" and that Cooperative's new credit originations were "well documented with credit memoranda that adequately articulated the credit decision processes." [DE 103-9 at 3]. The Court therefore finds, as a matter of law, that defendants' processes and practices for the challenged loans were *rational* and that plaintiff has failed to rebut the first presumption of the business judgment rule.

Therefore the Court moves to considering whether the challenged actions of the defendants can be attributed to a rational business purpose. The Court concludes they can be, as a matter of law. The burden of defeating the business judgment rule when the first presumption survives is extraordinarily high especially in conditions, as here, of a tumultuous market. *Eringhaus*, 717 S.E.2d at 30 ("Given the time demands and tumultuous market conditions, the business judgment rule is likely insurmountable in this case."). Cooperative's pursuit of the challenged loans was in furtherance of Cooperative's goal to grow to a $1 billion institution and stay competitive with other regional and national banks making substantial inroads into its

---

1 to 5, with a "1" being the highest score possible. *See generally* 62 Fed. Reg. 752-01, *Uniform Financial Institutions Rating System*. Banks scoring a "1" or "2" CAMELS rating are considered well-managed and presenting no material supervisory concerns. *Id.*

8

territory. [DE 102-5 Hundley Dec. at ¶6]. The record can simply not support a finding that the defendants' business purpose fell so far beyond lucid behavior that it could not even be considered "rational." Although there were clearly risks involved in Cooperative's approach, the mere existence of risks cannot be said, in hindsight, to constitute irrationality. Further, corporations are expected to take risks and their directors and officers are entitled to protection from the business judgment rule when those risks turn out poorly. Where, as here, defendants do not display a conscious indifference to risks and where there is no evidence to suggest that they did not have an honest belief that their decisions were made in the company's best interests, then the business judgment rule applies even if those judgments ultimately turned out to be poor. *Custard II*, 2010 WL at *22–23.

The Court finds that defendants are entitled to the business judgment rule's protection as a matter of law and indisputable fact. Therefore the Court enters judgment against plaintiff's claims for negligence and breach of fiduciary duty.

      B.      Defendants Were Not Grossly Negligent.

Section 1821(k) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) provides that the definition of gross negligence should be grounded in state law. "The difference between ordinary negligence and gross negligence is substantial . . . negligence, a failure to use due care, *be it slight or extreme*, connotes inadvertence. Wantonness [gross negligence], on the other hand, connotes *intentional wrongdoing*." *Yancey v. Lea*, 550 S.E.2d 155, 158 (N.C. 2001) (emphasis in original). North Carolina courts have historically used interchangeably the terms "gross negligence" and "willful and wanton conduct." *Id.* at 157. "Under North Carolina law, gross negligence has the same basic elements as negligence, but requires either intentional wrongdoing or deliberate misconduct affecting the safety of others,

9

such as when the act is done purposely and with knowledge that such act is a breach of duty to others." *Boykin Anchor Co., Inc. v. AT&T Corp.*, 825 F. Supp. 2d 706 (E.D.N.C. 2011).[2]

The FDIC has presented no evidence that any of the defendants approved the challenged loans and made policy decisions knowing that these actions would harm Cooperative and breach their duties to the bank. The FDIC cannot show that any of the defendants engaged in wanton conduct or consciously disregarded Cooperative's well-being. As the FDIC can point to no evidence supporting such a finding, defendants are entitled to summary judgment on the gross negligence claim.

IV. PLAINTIFF'S MOTION TO STRIKE.

Plaintiff seeks to strike the declaration of Robert T. Gammill and attached exhibits [DE 111-2, 111-3, and 111-4] because they allege it contains new expert opinions and previously undisclosed facts and data supporting them and because it was submitted after the expert witness disclosure deadline. However, as the declaration was submitted in support of defendants' memorandum in opposition to plaintiff's motion for partial summary judgment, and this Court has granted summary judgment in full in favor of defendants, the Court need not consider the motion. Accordingly it is denied as moot.

V. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

Plaintiff's motion for partial summary judgment on two of defendants' affirmative defenses is now moot as the Court granted summary judgment for defendants without relying on those particular affirmative defenses. However, the Court will briefly discuss the FDIC's claim

---

[2] The court notes that its earlier reliance, in *Willetts*, 882 F. Supp. 2d at 865, on *Jones v. City of Durham*, 622 S.E.2d 596, 597 (2005) *opinion withdrawn and superseded on reh'g*, 622 S.E.2d 202 (2006), was misplaced as the North Carolina Supreme Court withdrew the *Jones* opinion and no North Carolina court has applied the withdrawn reasoning of *Jones* while several have defined gross negligence in its traditional terms. *See e.g., Greene v. City of Greenville*, 736 S.E.2d 833, 835 (N.C. App. 2013) (defining gross negligence as "wanton conduct done with conscious or reckless disregard for the rights and safety of others").

that the "Great Recession" was not only foreseeable, but was actually foreseen by the defendants. [DE 98 at 24]. The Court discusses this claim only due to the absurdity of the FDIC's position.

The FDIC relies on several pieces of evidence to support its claim that defendants foresaw the downturn in the economy as early as October 2006. [DE 98 at 9–10]. However, it ignores the unique historical factors happening at the same time including numerous economists and economic forecasters' prognosis of a strong economy going forward at that time. *See e.g.* Chris Isidore, *Goldman's chief to take on Treasury*, CNN MONEY (May 30, 2006, 1:26 PM), http://money.cnn.com/2006/05/30/news/economy/snow_replacement/index.htm?cnn=yes "While that pace of growth is widely expected to slow, many economists see the economy remaining strong. . . ."). Even as late as April 2007, the United States Treasury Secretary was pushing the idea that the economy was strong and healthy and that the housing market had reached its bottom. Greg Robb, *Paulson says U.S. housing sector 'at or near bottom'*, MARKET WATCH (Apr. 20, 2007, 1:01 PM), http://www.marketwatch.com/story/paulson-says-us-housing-sector-at-or-near-bottom. Further, throughout 2007 and into 2008, North Carolina and national economists continued to publish upbeat economic forecasts. *See* Mark Schreiner, *Experts: N.C. to do well in 2007*, STAR-NEWS (January 3, 2007, 6:15 AM), http://www.starnewsonline.com/article/20070103/NEWS/ 701030430; *Federal Reserve Bank Press Release*, BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM (Aug. 7, 2007), http://www.federalreserve.gov/newsevents/press/monetary/20070807a.htm ("the economy seems likely to continue to expand at a moderate pace over coming quarters"); Harry M. Davis, *We are in a Recession*, NORTH CAROLINA BANKERS ASSOCIATION BUSINESS BAROMETER (April 2008), http://www.ncbankers.org/uploads/File/Bulletin/2008/April/080403Barometer.pdf ("while Florida, California, Ohio, Arizona, Nevada, Michigan are already in a recession, North Carolina is not").

After the fact, Federal Reserve Chairman Ben Bernanke observed that "a 'perfect storm' had occurred that regulators could not have anticipated," and former Chairman Alan Greenspan confessed that "it was beyond the ability of the regulators to ever foresee such a sharp decline." Financial Crisis Inquiry Commission, *Final Report of the National Commission on the Causes of the Financial and Economic Crisis in the United States*, January 2011 found at http://fcic-static.law.stanford.edu/edn_media/fcic-reports/fcic_final_report_full.pdf at 3. Further the Federal Crisis Inquiry Commission has concluded that "[c]laims that there was a general failure of risk management in financial institutions or excessive leverage or risk-taking are part of what might be called a 'hindsight narrative.'" *Id.* at 446 (concluding this narrative to be false).

In sum, the FDIC claims that defendants were not only more prescient than the nation's most trusted bank regulators and economists, but that they disregarded their own foresight of the coming crisis in favor of making risky loans. Such an assertion is wholly implausible. The surrounding facts, and public statements of economists and leaders such as Henry Paulson and Ben Bernanke belie FDIC's position here. It appears that the only factor between defendants being sued for millions of dollars and receiving millions of dollars in assistance from the government is that Cooperative was not considered to be "too big to fail." *See* Eric Dash, *If it's Too Big to Fail, Is It Too Big to Exist?* NEW YORK TIMES (June 20, 2009), http://www.nytimes.com/2009/06/21/weekinreview/21dash.html?partner=rss&emc=rss (discussing the "too-big-to-fail doctrine"). Taking the position that a big bank's directors and officers should be forgiven for failure due to its size and an unpredictable economic catastrophe while aggressively pursuing monetary compensation from a small bank's directors and officers is unfortunate if not outright unjust.

## CONCLUSION

For the forgoing reasons, defendants' motion for summary judgment is GRANTED, plaintiff's motion for partial summary judgment is DENIED AS MOOT, the various motions to seal are GRANTED, Defendants' motion to exclude is GRANTED, and plaintiff's motion to strike is DENIED AS MOOT. The clerk is directed to enter judgment accordingly and to close the file.

SO ORDERED.

This the __10__ day of September, 2014.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE